IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD RAYMOND SCRIBNER, II, | § | |
| Petitioner, | § | |
| v. | § | Civil No. 3:13-CV-1147-O-BH |
| | § | |
| UNITED STATES OF AMERICA, | § | (Criminal No. 3:10-CR-233-O) |
| Respondent. | § | |

## <u>ORDER</u>

Before the Court is Petitioner Donald Raymond Scribner II's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, filed March 8, 2013. ECF No. 2. In support of his motion, Petitioner raises two claims of ineffective assistance against his trial counsel. In his first ground for relief, Petitioner asserts that his counsel failed to advise him that he faced an enhanced sentence under the career offender sentencing guideline. He argues that had counsel correctly advised him, he would have pled guilty. Had he pled guilty, he argues the Court would have reduced his guideline range for acceptance of responsibility and he would have received a lower sentence. Instead, Petitioner went to trial, was convicted, and without a reduction for acceptance of responsibility, faced a minimum guideline sentence. In his second ground, Petitioner asserts that his counsel was ineffective for failing to object to the accuracy of the career offender guideline enhancement in his Presentence Report ("PSR").

This case was referred to United States Magistrate Judge Irma C. Ramirez, who entered her Findings, Conclusions, and Recommendation (the "Report") on July 2, 2014. Judge Ramirez recommended that Petitioner's motion be granted based on his first ground for relief and denied as to his second. *See* Report, ECF No. 16. Neither party filed objections to the Report.

The Court has conducted a de novo review of the Report, the transcript of the evidentiary hearing before the Magistrate Judge, and other pertinent portions of the record. Based on this review, and for the reasons set forth herein, the Court declines to accept the Magistrate Judge's findings and recommendation that Petitioner's motion should be granted, and his sentence vacated, because counsel failed to advise him that he was subject to the career offender enhancement. Specifically, the Court holds Petitioner was not prejudiced by the faulty advice as required by *Strickland v. Washington*, 466 U.S. 668 (1984) and *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012). In all other respects, the Court accepts the Magistrate Judge's findings and recommendation, and adopts them as those of the Court.

## I.     PROCEDURAL AND FACTUAL BACKGROUND

A grand jury returned an indictment against Petitioner on August 17, 2010. Count one charged Petitioner and four co-defendants with conspiracy to manufacture and to possess with intent to distribute 100 or more plants of marijuana in violation of 21 U.S.C. § 846. Count three charged him, and two co-defendants (A.S. and K.P.), with aiding and abetting the possession of 50 or more marijuana plants with the intent to distribute in violation of 21 U.S.C. § 841(a), (b)(1)(C) and 18 U.S.C. § 2.[1] *United States v. Scribner, et al.*, No. 3-10-cr-233-O (CR, Docket No. 32).[2] A.S. and K.P. pled guilty to count three. CR, Docket Nos. 49, 52, 53, 58, 109, 113.

Before trial, the Government proposed that Petitioner plead guilty to counts one and three and waive his right to appeal. Harper Affidavit at 2, ECF No. 7. He rejected this proposal and his case

---

[1] Petitioner was not charged in count two.

[2] "CR" hereinafter refers to the criminal record docket entries in Case No. 3-10-cr-233-O, Scribner's underlying criminal case.

was tried before a jury. CR, Docket Nos. 82-84. On January 12, 2011, the jury found Petitioner guilty of possession with intent to distribute 50 or more marijuana plants (count three) and not guilty of conspiracy to manufacture and to possess with intent to distribute 100 or more marijuana plants (count one). CR, Docket No. 85. On April 28, 2011, the Court sentenced Petitioner to a term of 210 months in prison, followed by a three-year term of supervised release, to run concurrent with any sentence imposed in two then-pending state cases. CR, Docket No. 117. His conviction and sentence were affirmed on direct appeal. *United States v. Scribner*, 469 F. App'x 384 (5th Cir. 2012). As recounted by the Fifth Circuit:

> Scribner was discovered by authorities in the process of dismantling a marijuana grow house in an effort to avoid police detection. A large amount of marijuana and grow equipment were found in the house, which Scribner possessed a key to in his wallet. . . . Further, Scribner acknowledged that he had been hired to dismantle the grow house and move the contents via a U-Haul truck to another location. He further acknowledged to dismantling another grow house belonging to the same organization days before his arrest. Scribner admitted to knowing that the organization was involved in the distribution of marijuana and that it consisted of several grow houses.

*Scribner*, 469 F. App'x at 385-86.

On March 18, 2013, Petitioner filed the instant Motion pursuant to 28 U.S.C. § 2255. ECF No. 2. On May 28, 2013, the Government filed its response (ECF No. 6), along with an affidavit of Petitioner's trial counsel (ECF No. 7). While the Government conceded an evidentiary hearing was warranted to resolve Petitioner's ineffective assistance claims, it argued that Petitioner failed to show that counsel's failure to advise him that he would be a career offender constituted deficient performance or caused him prejudice. Specifically, the Government contended that, in light of Scribner's claimed actual innocence of any intent to distribute, his rejection of an agreement to plead guilty to counts one and three, and his pursuit of a direct appeal alleging insufficiency of the evidence to convict him of count three, "it [was] not reasonably probable that Scribner would have pled guilty

to anything other than simple drug possession[.]" Gov't Resp. at 15.  On June 19, 2013, Petitioner

replied: "If I had known I was facing a minimum of 210 months, I would have explore[d] some plea

bargaining options.  Whether I was Innocent or Guilty is not the point.  What I am is not always the

deciding factor in making a decision."  Traverse Resp. at 1, ECF No. 8.

The Magistrate Judge appointed Petitioner counsel (ECF No. 14) and held an evidentiary

hearing to determine the validity of Petitioner's claim of ineffective assistance (ECF No. 15).  At the

hearing, Petitioner testified along with his trial counsel.

During the hearing, trial counsel conceded that she incorrectly advised Petitioner of his

potential guideline range.  She told him that if he pled guilty to count three of the indictment, the

applicable advisory sentencing guideline range would be 30-37 months in prison based on his criminal

history level and the amount of marijuana seized.  Transcript of June 25, 2014 Evidentiary Hearing

("Tr.") at 8:19-25.  She advised him if he pled not guilty and was convicted, the applicable advisory

sentencing guideline range would be 37-46 months imprisonment.  *Id.* Trial counsel conceded that she

was unaware that Petitioner would be classified as a career offender until the PSR was completed.  *Id.*

at 14-15.  She further testified that, as a result of his classification as a career offender, Petitioner was

actually subject to a guideline range of 151-188 months if he pled guilty and 210-240 months if he

proceeded to trial and was convicted.[3]  *Id*.  Trial counsel testified that her error may have influenced

Petitioner's decision to plead not guilty and proceed to trial.  *Id.* at 11:10-11.  She also testified,

however, that Petitioner always maintained he was innocent of any intent to distribute marijuana and

---

[3] The estimated range of 151-188 months assumes that Petitioner's offense level would be reduced
by three points for accepting responsibility.  *See* Harper Aff. at 1-2.  Whether Petitioner has met his burden
to show reasonable probability that he would have received this reduction is addressed below.

because of this belief, she did not believe he would necessarily have been willing to plead guilty.  Trial counsel testified:

> Q.     (Prosecutor) Is it fair to say that in all your meetings with Mr. Scribner that he maintained his innocence?
>
> A.     Yes.
>
> Q.     Did he maintain his innocence as to Count 1?
>
> A.     Yes.
>
> Q.     As to Count 3?
>
> A.     Yes.
>
> Q.     Did he ever indicate his intention to pursue a plea deal to either one or both of those counts?
>
> A      No.
>
> Q.     In your affidavit, you indicate that his claim of actual innocence drove your strategy in this case; is that correct?
>
> A.     Yes.
>
> Q.     Can you explain that, please?
>
> A.     Well, to go – I don't want to go into too much detail, but this case involved a marijuana grow operation that had been compromised by a fire and subsequent official discovery.  The parties involved who did not include Mr. Scribner had made a determination to take the operation down temporarily to cool things off.  Mr. Scribner – it is my understanding and I believe the facts at trial supported this – was brought in the day before to help take the

operation down.  Mr. Scribner maintained throughout that he had only gone there to help tear the stuff down and throw it away.  He maintained that the plants were supposed to already have been gone before he got there.  He was exceedingly angry that he was even charged in this because he didn't have anything to do with the drugs.  His criminal history included actually zero drug trafficking convictions and he was adamant that wasn't what he did.  Based upon his assertions, there was really nothing to do but try this case.  We certainly had an innocent man who was facing prison time for something that he was adamant he did not do.

Q.     The final paragraph of your affidavit indicates that based upon Mr. Scribner's claim of actual innocence to the offense in the indictment, I believe there would have even been more motivation to try the case had he recognized that the career offender provision applied.  Can you explain that, please.

A.     When I have had clients in the past who have had a viable claim to actual innocence for a charge, in my experience it has been – if an offer of a lesser included offense, simple possession, misprison of a felony is not forthcoming, and they are aware that they are facing a 20-year sentence and they are adamant for something they didn't do, there is more urgency to try this case and acquit this person.  I will say there is nothing more nerve racking when you believe your client is innocent and that was the case here with Mr. Scribner, but it is one thing to plead guilty after you have been sitting in custody for a year and something else altogether when you feel you

-6-

> are innocent to plead guilty to something that is going to put you away for 14
>
> or 15 years.

*Id.* at 21:6-25, 22:1-25, 23:1-12.   On redirect examination, trial counsel reiterated that Petitioner
maintained his innocence throughout:

> Q.  (by Defense counsel) Ms. Harper, you stated that Mr. Scribner maintained his
>
> innocence throughout and that drove your trial strategy, is that correct?
>
> A.  Yes.

*Id.* at 24:11-14.

Petitioner testified on direct examination that trial counsel had advised him that the applicable
sentencing guideline range would be 30-37 months if he pled guilty, and 37-46 months if convicted
at trial. *Id.* at 27:1-5.   When asked whether knowledge that he was actually facing a minimum
guideline sentencing range of 210 months if convicted at trial would have been a factor in deciding
whether to engage in plea negotiations, Petitioner testified: "Yeah, that could have been a huge factor."
*Id.* at 34:18.   Additionally, Petitioner testified:

> A.  I definitely would have wanted to enter into plea negotiations and try to work
>
> something [out] with my criminal record[.] I know I have a bad record, so I
>
> probably would have pled guilty and through mercy try to get less points.  By
>
> going to trial, I know I am going to get the max.  They are not going to give
>
> me leniency going to trial, so I probably would be looking at 240 months.  If
>
> I plead guilty and get the three-point acceptance and go into that because you
>
> say it is advisory.

*Id.* at 30:11-20.  When asked what he would have done differently had he known his actual exposure if convicted at trial, Petitioner testified:

> A.    Let me start from the beginning.  This case didn't seem real important because it really wasn't a large amount of marijuana.  I didn't think anybody would get this amount of time or would be looking at this amount of time for the crime whether I did or didn't do it . . . I mean, I pled guilty to things I have not been guilty of, just the fact that I will get less time.

*Id.* at 32:22-25, 33:1, 33:8-10.

On cross-examination, Petitioner responded to the Government's questioning as follows:

> Q.    (Prosecutor) Mr. Scribner, you don't think you are guilty of the offense that the jury convicted you of, do you?
>
> A.    Sir, my definition of being guilty and maybe the law's definition of guilty are different.  I was found guilty because I was there.  If that is the law, then I am guilty by the law's standards.  Do I sell marijuana?  No, I don't.
>
> Q.    At the time you were at that house, you are saying that you did not intend to distribute any of this marijuana?
>
> A.    That marijuana was trash.  It couldn't even be distributed.
>
> Q.    So the answer to my question is?
>
> A.    No, sir.
>
> Q.    You didn't intend to distribute marijuana?
>
> A.    No, sir.
>
> Q.    At no time did you have that intent; is that what you are saying?

-8-

A.       Yes, sir.

Q.       Do you recognize that if you were going to plead guilty to Count 3 which is

         possession with intent to distribute marijuana that you would be brought into

         a courtroom just like this one; do you recognize that?

A.       Yes, sir.

* * *

Q.       So in other words, you were willing to commit perjury and tell the judge you

         were guilty when, in fact, you didn't believe you were guilty?

A.       I would say that I aided.  I guess I would have to take that part of it and say

         I aided by tearing the house down.

* * *

Q.       So are you changing your testimony.  Do you believe that you are guilty of

         aiding and abetting the possession with intent?

A.       I believe that the law feels I am guilty.

*Id.* at 34:25, 35:1-24, 36:18-23, 37:18-21.

## II.       APPLICABLE LEGAL STANDARDS

### A.       Standard of Review

When reviewing a magistrate judge's report, a district judge "shall make a de novo

determination of those portions of the report or specified proposed findings and recommendations to

which objection is made."  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(3).  Further, the district

judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge."  *See id.*  While § 636 "does not require the judge to review an issue de novo if

no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." *United States v. Brigham*, 569 F.3d 220, 228 (5th Cir. 2009) (quoting *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985)).

**B.      Title 28 U.S.C. § 2255**

Title 28 U.S.C. § 2255 provides that a prisoner in custody under sentence of a federal court may file a motion to vacate, set aside, or correct the sentence in the court that imposed the sentence. The statute states four grounds upon which such relief may be claimed:

1.    that the sentence was imposed in violation of the Constitution or laws of the United States;

2.    that the court was without jurisdiction to impose such sentence;

3.    that the sentence was in excess of the maximum authorized by law; and

4.    that the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 does not mandate habeas relief to all who suffer trial errors. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). It is instead limited to grounds of constitutional or jurisdictional magnitude, *Limon-Gonzalez v. United States*, 499 F.2d 936, 937 (5th Cir. 1974), and for the narrow spectrum of other injury which "could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *Capua*, 656 F.2d at 1037.

**C.      Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A sentence imposed as a result of ineffective assistance of counsel is one imposed in violation of the Sixth Amendment to the United States Constitution. *See*

*generally United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (and cases cited therein). The Supreme Court has held the Sixth Amendment guarantees a criminal defendant "reasonably effective assistance" of counsel, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), including "the effective assistance of competent counsel" during plea negotiations. *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "An attorney renders constitutionally ineffective assistance where his performance was deficient and prejudiced the defense." *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012).

When a convicted defendant seeks relief on the ground of ineffective assistance of counsel, he must show that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 687-91, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The court need not consider the two inquires under *Strickland* in any particular order since a failure to establish either requirement necessarily defeats the claim. *Id.* at 697; *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990). Because the Court accepts the Magistrate Judge's recommendation in all aspects save for the prejudice factor, the prejudice factor will be addressed below.

## III.    ANALYSIS

The Magistrate Judge concluded Petitioner carried his burden to show he was prejudiced by his counsel's failure to properly advise him that he faced sentencing as a career offender. Report at 8-11, ECF No. 16. To establish prejudice on his ineffective assistance claim, Petitioner

> must show that but for the ineffective advice of counsel there is a reasonable probability that [1] the plea offer would have been presented to the court (i.e. that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its

terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, ___ U.S. at ___, 132 S. Ct. at 1385.   The Court will consider these three hurdles in turn.

> 1.   *Has Petitioner shown to a reasonable probability that, absent ineffective advice of counsel, he would have accepted the plea?*

On this factor, the Magistrate Judge made the following findings and recommendation:

> Movant testified under oath that he did not believe that the case against him was that serious based on the low estimated guideline ranges, that he believed that the difference in the sentencing ranges between a plea and a trial was only seven months, that this had a great influence on his decision to plead not guilty, and that he would not have done so had he known that the difference was actually five years.  Counsel conceded that her error may have affected her client's decision to plead not guilty.  Based on the demeanor of the witnesses at the hearing, their respective roles, any apparent bias, consistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds Movant's testimony credible.  Based on the testimony and evidence, he has shown a reasonable probability, *i.e.*, a probability sufficient to undermine confidence in the outcome, that he would have accepted the plea offer before it was withdrawn if he had been correctly advised of the applicable sentencing guidelines.  He has therefore met his burden to show prejudice, and he has satisfied the Strickland standard for ineffective assistance of counsel.  *See Lafler*, 132 S.Ct. at 1391.

Report at 10-11, ECF No. 16.

Upon a review of the transcript of the evidentiary hearing and the pertinent portions of the record detailed above, the Court cannot conclude that Defendant would have accepted a plea agreement.  The Court recognizes, however, that the Magistrate Judge had the opportunity to assess in-court statements made by Petitioner and trial counsel, observe each witness's demeanor, and make credibility determinations.  As such, the Court declines to disturb these credibility determinations.

> 2.   *Has Petitioner shown to a reasonable probability that the Court would have accepted the plea?*

On this factor, the Magistrate Judge made the following findings and recommendation:

> Here the parties do not dispute that the court would have accepted the terms of the plea offer; it accepted the same plea to count three of the indictment from Movant's co-

defendants.  *See United States v. Prasavath*, No. 3-10-CR-0233-O(2) (docs. 49, 53);
*United States v. Syharath*, No. 3-10-CR-0233-O(3) (docs. 52, 58).

Report at 8-9, ECF No. 16.  Based on a de novo review of the testimony presented at the evidentiary

hearing, as well as the pertinent portions of the record in this case, the Court declines to adopt these

findings.

Whether the co-defendants' plea agreements were accepted by the Court is not the relevant

inquiry.  In stark contrast to the testimony of the co-defendants at their re-arraignments, the record in

this matter discloses nothing other than Petitioner's dogged insistence of innocence.  On questioning

by the prosecutor, trial counsel testified that Petitioner maintained his innocence as to counts one and

three throughout the case, and never indicated any intention to plead guilty to these counts.  Tr. at 21:6-

25, 24:11-14.  In addition to trial counsel's testimony, Petitioner's own testimony reveals that he

believed he was not guilty of the elements of the crimes charged in counts one and three of the

indictment.  The only thing he agreed he intended to do was throw marijuana away, because he

believed it was not worth anything.  On cross-examination, Petitioner continued to vacillate about

whether he was in fact guilty of these offenses.  Tr. at 34:25, 35:1-24, 36:18-23, 37:18-21.  In addition,

when asked whether knowing that he was actually facing a minimum guideline sentencing range of

210 months if convicted at trial would have been a factor in deciding whether to engage in plea

negotiations, Petitioner testified: "Yeah, that could have been a huge factor."  *Id.* at 34:18.  The Court

further notes in his motion to vacate, Petitioner asserted: "If I had known I was facing a minimum of

210 months, I would have explore[d] some plea bargaining options.  Whether I was Innocent or Guilty

is not the point.  What I am is not always the deciding factor in making a decision."  Traverse Resp.

at 1, ECF No. 8. In context, the Court can only conclude that Petitioner would not have admitted the factual basis necessary to support a plea of guilty.[4]

On this record, the Court concludes that Petitioner, who adamantly insisted on his innocence, and who in his motion to vacate his sentence and in his testimony at his § 2255 hearing refused to affirmatively acknowledge that he was guilty of the elements of the crimes charged, has failed to show a reasonable probability that the Court would have agreed to accept the terms of the plea. *See Lafler*, ___ U.S. at ___, 132 S. Ct. at 1385.

> 3.     *Has Petitioner shown to a reasonable probability that his sentence, under the offer's terms, would have been less severe than the sentence imposed?*

On this element, the Magistrate Judge made the following findings and recommendation:

> There also appears to be no dispute that there is a reasonable probability that Movant's sentence would have been less severe if he had pled guilty, the third element. The

---

[4] Nor has Petitioner shown he would have otherwise entered the equivalent of a guilty plea. Rule 11 of the Federal Rules of Criminal Procedure permits a Defendant to enter a plea of nolo contendre, but only with the consent of the court. In addition, a defendant may request to enter an *Alford* plea, again with the consent of the court. *See United States v. Harlan*, 35 F.3d 176 (5th Cir 1994). The Court is normally hesitant to permit a defendant to plead guilty unless he is actually guilty of the crime charged, absent a sufficient basis for doing so. Illustrative of this principle is the Court's refusal to accept the guilty plea in *United States v. Campbell*, 3:12-cr-181-O(2). *See* Transcript of Re-Arraignment Hearing, ECF No. 124. Like Petitioner in this case, defendant Campbell was facing multiple counts and believed he was innocent of the charge of possession with intent to distribute crack-cocaine, which the Government required him to plead guilty to if he wanted a plea agreement. Campbell vacillated when asked if he was actually guilty of that charge during his re-arraignment because Campbell believed he was not guilty of that charge. As a result, the Court refused to accept his plea. The jury ultimately refused to convict Campbell on that charge. *United States v. Campbell*, 3:12-cr-181-O(2), ECF No. 69, Jury Verdict.

In this case, it is not disputed that Petitioner firmly believed he was not guilty of the crimes alleged in the indictment, and the jury agreed with him as to count one. The only motivation for Petitioner to enter a guilty plea equivalent would have been that he wanted to receive a reduction for acceptance of responsibility. As shown below however, he has not shown a reasonable probability that he would have received that reduction. Absent that reduction, Petitioner has failed to show he would have entered either a nolo contendre or *Alford* plea and, to the extent the record permits an inference that he would have been willing to do so, he has additionally failed to offer sufficient reasons to show why the Court would have consented to such a plea.

lower end of Movant's sentencing guideline would have been adjusted downward almost five years with acceptance of responsibility had he pled guilty.

Report at 8-9, ECF No. 16.

Based on its de novo review of the testimony presented at the evidentiary hearing, as well as the pertinent portions of the record in this case, the Court declines to adopt this finding. The Government, in its response to Petitioner's motion to vacate, argued that Petitioner had not satisfied this third step. In its brief, the Government argued:

> Nor is it reasonably probable that [Petitioner] would have "clearly" accepted responsibility to merit the guideline reduction, which is not automatically conferred upon the entry of a guilty plea. . . . The offer required him to plead guilty to both counts, subjecting him to five to forty years in prison, irrespective of the guidelines. . . . Even after his conviction, when he knowingly faced the career offender enhancement, he did not take affirmative steps prior to sentencing to reduce his guideline range by accepting responsibility. Other indicators of his steadfast unwillingness to accept the offer and to accept responsibility are his post-*Miranda* interviews, where he told lies and half-truths, his persistent argument that he was guilty only of simple possession, and his pursuit of a direct appeal alleging insufficiency of the evidence to convict him of count three (which would have been foreclosed by the plea agreement).

Gov't Resp. at 11-12, ECF No. 6.

After his conviction, the Court determined Defendant's guideline range was 210-240 months imprisonment and sentenced Petitioner to 210 months. Petitioner now argues that had he pled guilty to that charge, he could reasonably have expected a sentencing guideline range of 151-188 months after a reduction for acceptance of responsibility.

Under the sentencing guidelines, acceptance of responsibility is shown by pleading guilty "combined with truthfully admitting the conduct comprising the offense of conviction," but "this evidence may be outweighed" by conduct inconsistent with such acceptance of responsibility. *See*

USSG § 3E1.1(a) and cmt. 3.  Further, "a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."  *See id.*

As the Government correctly argued in its response to Petitioner's motion to vacate, and as evidenced by Petitioner's testimony at his § 2255 evidentiary hearing, the record discloses no indication that Petitioner at any time "clearly" accepted responsibility for his offense of conviction. Rather, the record evidence is to the contrary.  Throughout this case, and even at his § 2255 evidentiary hearing, Petitioner maintained he was innocent of any intent to distribute, and continued to hedge and waiver throughout that hearing even in the face of the jury verdict and an unsuccessful appeal.  At his § 2255 hearing, he only grudgingly conceded that he "guessed" he aided tearing down the house and, while he does not appear convinced he is guilty, he testified "the law feels I am guilty."[5]  Finally, there is no record evidence showing that after conviction and before sentencing, Petitioner engaged in any conduct consistent with acceptance of responsibility.  And based on the foregoing, even if Petitioner had successfully entered a plea of nolo contendre or an *Alford* plea with the consent of the Court, he would not have been entitled to a reduction for acceptance of responsibility.  *See United States v. Harlan*, 35 F.3d 176, 181 (5th Cir. 1994) (When a defendant enters an *Alford* plea, his "refusal to acknowledge essential elements of an offense is incongruous with the guideline's commentary that truthful admission of the conduct comprising an offense is relevant in determining whether a defendant qualifies for this reduction.").

---

[5] Even had Petitioner pleaded guilty or the equivalent, his guess that he "aided" in tearing the house down would not be enough to entitle him to acceptance of responsibility under the guidelines because to accept responsibility for aiding and abetting would require him to agree that he associated with the crime *and* participated in it with the intent to bring about the crime.  He must share in the intent to commit the substantive offense.  *See United States v. Gallegos*, 239 Fed. App'x 890, 897 (5th Cir. 2007); Fifth Circuit Pattern Jury Charge 2.06.  To this day, Petitioner does not agree that he shared in that intent.

For these reasons, the Court concludes that Petitioner has failed to demonstrate a reasonable probability that his sentence would have been less severe if he had pled guilty.

## IV.      CONCLUSION

For the foregoing reasons, the Court **declines to adopt** the Magistrate Judge's findings and conclusion that Petitioner carried his burden of showing he was prejudiced by counsel's failure to properly advise him that he faced sentencing as a career offender.  The Court **accepts** the Magistrate Judge's findings, conclusions, and recommendations in all other parts, and **adopts** them as those of the Court.  Accordingly, the § 2255 motion is **DENIED**.

**SO ORDERED** this **28th day** of **August, 2014.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**